Court will proceed to the next case, Labrec v. Walker. Mr. Turner. It please the Court, the appellees in the district court here commit the very error this court corrected in Sin v. Lemon by focusing solely on the specificity of Mr. Labrec's complaint in terms of his words rather than focusing on the totality of the circumstances as is required under Brennan. Did Mr. Labrec ever give any description of McNeely's troubling behavior beyond stating that he was acting crazy? Your Honor, yes, he did with the first psychologist that visited him, or rather he visited her, Dr. Persicki, telling her of the threat that Mr. McNeely made to him. That threat, then, was communicated by both Mr. Labrec and Dr. Persicki in a conference with Wilson and Kraft, and I think it's important to note that the district court dismissed the communications between Mr. Labrec and the psychologist, finding that those communications never made it to the defendants, but I don't think the record supports that, and it certainly doesn't support it in light of Mr. Labrec's pro se status and liberally construing the complaints and the pleadings in his court. And I have just one quick other record question for you. Does the record indicate whether any of the defendants investigated Mr. Labrec's claim that Mr. McNeely was unstable and acting crazy? Such as by speaking with, with McNeely, or asking Labrec if he could describe the behavior in more detail that was so troubling him? Your Honor, that's an excellent point. I know the record does not reflect that there was any investigation, and in fact, I think the record can fairly be construed to show that the defendants say they did nothing. And that's what makes this case like Billman and different than Olson, which the district court relied on. In Olson, there was a complaint, but the defendants there investigated it and were able to rely on a credibility determination of that complaint because of their investigation. Here, the defendants don't have the benefit of saying, you know, Mr. Labrec complained to us, but we found his complaint lacking for whatever variety of reasons. And so it makes this case like Horshaw, where the defendant there, Casper, didn't look into the complaint. The complaint there was even more bare bones than the complaint here. And I'm not suggesting, Your Honors, that the complaint here is bare bones. I think there's plenty here in terms of the words that were communicated and the circumstances in which the complaint was made that make this a very sufficient warning to the defendants. Well, I thought in Horshaw, it surprises me that's the way you read Horshaw. I thought in Horshaw, the inmate there expressed concern about being, did he call it eradicated? And fear of being stabbed. That's a lot different than saying my cellmate's acting crazy. In terms, if the question is, were the guards made aware, you know, of a specific credible and imminent risk? I mean, those are very different facts. Your Honor, that is true. The district court, however, found that the letter and its contents were lacking those specific words. And in fact, Judge Easterbrook notes that in reciting what the district court found, that the letter did not say who the threat came from, who delivered the threat to Horshaw, the contents of the threat due to the brain injury that Horshaw suffered, and also lacked any indication of when this threat would be carried out. Here, by contrast, we have Mr. Lebrecht warning repeatedly that my cellmate is making me feel unsafe. My cellmate is acting crazy. He's acting unstable. I need to be moved immediately. Something else that I think is important, a factor that this court should consider and the district court did not consider, is the urgency of the complaint. In Horshaw, a letter was sent, and as Judge Arnold in the Eighth Circuit and Young v. Selk noted, a letter or a kite in a prison context notes a lack of urgency, whereas an individual person-to-person complaint indicates urgency of the matter and is a circumstance that should be considered by prison officials. Is that what you, in your brief, and this is part of the way I interpret Judge Robner's question, in your brief on page 13, you say, each of the defendants, and I believe there's five, right? Correct. Received what you refer to as detailed information that Lebrecht was in danger. What are the details? First and foremost, Your Honor, he notified them that he was a pair with care inmate. I think that's important to set the context of all subsequent communications. The district court and the defendants dismissed that label as meaningless or lacking any sort of substance. I think that just defies the words of the label itself as well as Defendant Walker's explanation of what that meaning meant to her. Second, he warned them that he was unsafe. He warned them through the psychologist that Mr. McNeely, his cellmate, was acting unstable, was acting very crazy, and he needed to be moved immediately. Psychologist is not a defendant though, right? Correct. But the allegations do say that every time he spoke with a psychologist, the psychologist and Mr. Lebrecht in person spoke with Kraft, Wilson, Chapman, Meeker. So these communications were cumulative and passed on to the defendants. And so they were all made aware of that. And by the time he reached Defendant Walker, he says that he communicated everything that had been talked about, why he felt unsafe. In construing these allegations in light most favorable to Mr. Lebrecht, I think it's reasonable that a jury could infer the liberty. Mr. Turner, if you're a prisoner who's labeled pair with care, when he makes a statement regarding future cellmates, what interpretation should you give to his threats of saying someone is crazy? In other words, should you be alerted because he's a pair with care prisoner that anything he says is a moment? Or would you be a little bit suspicious perhaps that someone who's a pair with care might not be as reflective as you would want in this situation? That's a good point. And I think what deserves emphasis is that this is one factor, one fact that the defendants were aware of. And it must be weighed in consideration of all of the facts. And so on its own, that might not be enough. But taken together with the fact that he's requesting repeatedly to meet with the very people who are there to ensure safe cell assignments to psychologists, that he's doing it repeatedly, three times in two days, that he's saying, I feel unsafe, which Defendant Walker in her declaration says, that alone would be enough for me to move him. That would merit some type of follow-up. As Farmer says, you just have to have a reasonable response. But if what you're saying is right, that we should assume that the guards in the facility know the facts and they know the circumstances in the context, I think the pair with care designation hurts him. Because the pair with care designation, as I read it, came about because on July 20, 2016, he became so upset when his telephone call got disconnected that he was throwing a chair and pounding tables and windows and what have you. Respectfully, Honor, I think that's an incorrect reading of the record. The pair with care status predated that incident. It predated the incident? It predated the incident. I'd like to reserve the remaining time that I do have, Your Honor. All right. Thank you, Mr. Chairman. Mr. Kosky? May it please the Court. Wisconsin Assistant Attorney General Clay Kosky appearing on behalf of the defendants' appellees. I have two main points. First, this Court should affirm the district court's summary judgment grant to the defendants with regard to the Eighth Amendment claims. Second, the district court did not abuse its discretion or erroneously exercise its discretion when it denied Mr. Lebrecht's motion to appoint counsel. With regard to the Eighth Amendment claims, Mr. Lebrecht has not and cannot show a specific, imminent, and credible threat of substantial harm that was caused by Mr. McNeely to establish an Eighth Amendment claim. And that still remains a standard, even after— Here we have evidence that Mr. Lebrecht communicated insistently and repeatedly that he was in danger, that his cellmate was unstable, and acting crazy. Even if that presents a close question, why isn't the risk of harm apparent when you combine that with Mr. Lebrecht's pair with care that indicates he was at higher risk, the anxiety attack that certainly lends credence to his claim that he was under stress, McNeely's status as a person who had attacked his prior cellmate. I mean, isn't that at least enough to require an investigation by prison officials? Thank you, Judge Rovner. So I think that you're correct to point out that really this Court's precedents have trended toward totality of circumstances. But that even being the case, under Horshaw and Sin, still we have to look at the three main things we're talking about. Repeated requests to be transferred in with a different cellmate. Now, this Court has previously said and has not overruled its statement in Ricardo v. Rausch. And in fact, Judge, the Court cited again in Horshaw-Ricardo, where the Court needs to keep in mind that this is a prisoner, and prisoners regularly make statements to seek transfers of cellmates. So again, he repeatedly asked to be with a different cellmate. He stated that he was pair with care. I agree with Judges Flom and Scudder. I don't think that this evidence is very supportive of his claim. First of all, we don't know if the evidence of pair with care, based on this record, was meant to protect Mr. Lebrecht, or was it meant to protect people from Mr. Lebrecht. That's a really important point. Because it seems to me, you know, in the brief certainly, you seem to argue that Lebrecht was the aggressor. And the pair with care was an attempt to protect cellmates from Lebrecht. But on summary judgment, we have to, whether we want to or not, we have to take all inferences in favor of the plaintiff. And absent some undisputed explanation of what pair with care means here, why shouldn't we allow the inference that it was designed to protect Lebrecht as a vulnerable inmate, when you put it together, you know, with everything else that went on during these few days. Right. So again, we go back to looking at everything. Under Farmer v. Brennan, looking at everything, we have to say that there was an excessive risk that was ignored. That there was a substantial risk. And when we look at the statements that actually reached the defendants, the statements of Mr. Lebrecht saying that he was afraid, he did not feel safe, he never said that he didn't feel safe because of McNeely. He never said that. And I know that the response that I think I would raise is, well, the circumstances permitted that inference. But that's what's missing here. He never said that McNeely threatened him, which I think would have been a different case. He didn't say that. He said he didn't feel safe. Would you limit serious risk of harm cases to ones in which a specific verbal or written threat is made to the inmate? In other words, what I'm trying to get to is, why can't erratic conduct and the communication of erratic conduct, why can't that communicate a threat of harm? In some circumstances, it could. Here, we argue it didn't. Again, we're talking about a four-day period. During that four-day period, the record reflects that there were no other bad interactions between these two that were observed by the defendants. There weren't any bad interactions reported by Mr. Lebrecht. And so, again, we have to look at all the circumstances of those four days leading up to this. Certainly, there were certain statements that Mr. Lebrecht said, such as that he thought McNeely was acting crazy. But I think the district court, Judge Peterson's explanation for that is that, well, he was annoyed with him, that his behavior was annoying. Acting crazy can mean a lot of different things. And, again, we have to look at this through the lens of Ricardo versus Rauch, which, even after Horshaw, is still a good precedent here in the Seventh Circuit. And prison guards are allowed to look at an inmate's statements very carefully. I think, Judge Pflaum, you alluded to it without citing Ricardo directly. But I just want to bring the court's attention back to that case, which is still a good precedent, even after Sinn and Horshaw. Another point I want to make about Sinn, Horshaw, even Givas versus McLaughlin, these are all cases involving gang situations. You would not expect the level of detail or the nature of the threat to be as clear in a case involving gang retaliation. We don't have that here. So I think that's a very important factor to distinguish this case from cases like Horshaw and Sinn. We pointed to Givas, the 2015 case, which is also a gang case, as being an example of a case that would meet the standard, where this court held that there could be an Eighth Amendment violation and sent the case back for a trial. This case is different, though, because, again, it doesn't involve that gang context like those other cases did. And the specific information that was communicated to the defendants in the surrounding circumstances simply were not enough to establish a violation. Let me tell you what concerns me a bit here, and that is that I worry that we're imposing a burden on an inmate to come forward with a degree of particularity, a degree of detail to what, in substance, is fairly communicated that is just too much. Because the comment here that McNeely is acting crazy, I think the only thing it can possibly mean is some sort of expression of concern by Labreck about his own personal safety. And the reason I say that is because it's accompanied by Labreck himself saying, I feel unsafe. He's not saying McNeely's acting crazy. He keeps pounding his head against the window. He's up half the night. He's talking to himself all night long. And so what more do we need him to say that he's acting crazy and I think he might shank me? I mean, then Labreck may not know. And is that what we're asking for, the inmate to start speculating about the precise form that the harm could take that may befall him? I'll say that we're not looking for certain magic words here, but look at the flip side of the coin. If this court countenances this as being satisfactory, then all inmates need to say is, I felt unsafe. And my cellmate was acting crazy. Crazy does not equate with the threat of harm. There's more here. You know, the man has a panic attack. He talks to the psychologist. You also have the fact, as I mentioned previously, that, you know, the last roommate was harmed. Prisons are, you know, funny places. Everyone knows everything that goes on. It's close, but yeah. The way I'd respond to that is that I think that here we know that the record's very clear. Mr. Labreck was able to detail in a declaration what his interactions were with the psychologist, and what he believed the defendants knew. And so, again, not a complex situation. And if you look at his declaration, even accepting what's stated in the declaration, it doesn't meet the standard under this court's cases, nor under Pharma. And I think that's the key here, and that's what I want to end on. So we would ask that this report would affirm the district court's judgment. Thank you, Your Honors. Thank you, Mr. Cross. Thank you. Your Honors, most prisoners are not prophets, and they don't need to be protected by the Eighth Amendment. And here I want to start with the defendant's reliance on Ricardo. I agree that if a defendant investigates a complaint, they have the ability to disbelieve that complaint based on factors that their investigation uncovers. But here it's undisputed that the defendants conducted no investigation. So they're in the same shoes as the defendant in Horeshaw, where Judge Easterbrook noted that he can't claim that he disbelieved him because he conducted no investigation. So Ricardo is inadequate. Secondly, I'd like to correct Mr. Kowski's statement that Lebrecht here never said that McNeely made him feel unsafe. He said, I feel unsafe, and my cellmate is acting crazy. The inference there is obvious, and a jury could draw the inference that he's referring to McNeely. I don't know what other interpretation there is. Finally, the question I'd like to pose to your honors is what additional information would be needed here to make this a sufficient warning to trigger deliberate indifference. As far as I can tell, the only additional information Mr. Lebrecht could have provided would be that oracular information such as the time and manner of an attack. And he wasn't lucky enough in this case for his assailant to forewarn him, but he doesn't need to have that forewarning. Thank you, your honors. Thank you. Thank you to both counsel. Mr. Turner, you have the additional thanks of the court for accepting the appointment in this case. Case is taken under advisement.